## KING v. CONNABEER.

(District Court, S. D. New York. September 25, 1906.)

SHIPPING—INJURY TO VESSEL—NEGLIGENT MOVING OF BARGE.

Evidence considered, and *held* to establish the claim of a libelant that an injury to his coal barge was due to the fault of respondent in moving her while discharging in Harlem river at a time when the tide was too strong, in consequence of which she broke the lines and drifted against a bridge pier.

In Admiralty.

John F. Foley, for libellant.
James J. Macklin, for respondent.

ADAMS, District Judge. This action was brought by John F. H. King, the owner of coal barge No. 1 K, against John S. Connabeer, the consignee of the coal laden on board, doing business at the foot of 137th Street, Harlem River, for injuries alleged to have been sustained by the boat in moving her to effect a change of position during the progress of the discharge, on the 24th day of February, 1905. The boat reached the respondent's place on the 23rd and discharging was then commenced. On the 24th, while being moved, she escaped from the men doing the work and drifting down stream with a strong flood tide, struck the bridge pier in the center of the river, opposite a point between 135th and 136th Streets, doing herself some damage.

The controversy arises out of the question of responsibility for such damage, the libellant claiming that it was due to the moving of the boat by the respondent for its convenience, at an improper time, when the tide was too strong for such an attempt, and in an improper manner; while the respondent contends that the moving was necessarily done and that the trouble arose from the libellant's carelessness in fastening a line which ran from the respondent's steam winch on the wharf to the barge, as requested by those in charge on the wharf.

It appears that when the boat reached the respondent's place she was made fast on the southern side of a slip at the end of 137th Street. Her length being 102 feet, it was somewhat greater than the depth of the slip and she extended a few feet outside into the river. The discharge was being made by the respondent. During the first day she remained where first made fast, during which time the coal was taken from the 2d and 3d beams from the bow, the boat being an open one. This continued the next morning for about 2 hours. At the end of this time, there was a strong flood tide prevailing, running at the rate of at least 4 miles an hour, towards the southern end of the river. At that time, the respondent wished to shift the boat, and undertook to do so, by making fast some of the boat's lines to his own line, running from the drum of a steam winch located in a small elevated engine room on the southern side of the wharf, about two thirds of the distance from the bulkhead to the end of the wharf. A number of tons of the coal located in the forward part of the boat had been taken out, probably about 75 tons out of a total load of between 350

and 400 tons and the respondent urges that the boat was then shifted because the libellant wished it done to preserve the proper trim of his boat. The libellant denies this and says that more coal could have been taken from that end without injury to the boat, which was unusually strong and staunch. A good deal of discussion ensued upon this point and for whose benefit the moving of the boat was done, but the respondent's contention is opposed by the libellant's testimony and inconsistent with the pleadings, which as above shown, allege fault on the boat's part, not because she was moved for her own purposes, when it became necessary to have it done, but because it was improperly done. The defense is set forth as follows:

"Seventh: Respondent further answering alleges upon information and belief that the facts as to the matter of damage referred to in the libel herein are as hereinafter stated; That in the course of the discharging of the cargo it became necessary to move the said barge and the same is done by fastening a line from a steam winch on the wharf to the said barge; that the master of the said barge refused to fasten the line as requested from the dock and attempted to fasten the said line upon the said barge himself, but that the said master of the barge so negligently, carelessly and improperly fastened the said line on the said barge, that when she was partly turned around one of the lines was allowed by said master to slip off the said barge, permitting her to drift with the tide and bringing so much strain on the other line as to pull it from its fastening on the wharf permitting the boat to go down the stream; that thereupon a line was passed from the steam winch to the barge to pull her back to the dock, but the master of the barge wholly failed to make fast the line upon the barge in a proper and safe manner and as he was directed by those on the wharf, and insisted upon having his own way and improperly and unskilfully fastening the line to the side of the barge, thus permitting the barge to turn at an angle instead of pulling straight ahead, causing the line finally to part by reason of which the said barge received the damages complained of in the libel.

Eighth: That the said damage was not caused by any fault or negligence on the part of the respondent or his servants, but was wholly caused by and through the fault, and negligence of the master of the said barge in the following respects:

(1) In carelessly, negligently and improperly fastening the line from the dock to said barge.

(2) In carelessly, negligently and improperly making fast the line from the dock to the side of the said barge instead of to the end of said barge as he was requested, and as he ought to have done."

The weight of the testimony shows that the respondent sought to move the boat for his own purposes, notwithstanding the protest of the master, who recognized the danger at that stage of the tide and said it should have been done at slack water, which was certainly true. The proximate cause of the damage therefore was the moving of the boat at an improper time and unduly exposing her to the effect of the tide.

There is a contention on the part of the respondent that the master of the boat did not handle the lines properly, which was the cause of the boat getting adrift. This the libellant's principal witness, the master of the boat, denies and I think the fact was that he did the best he could. The movement required a greater length of line than the line of the respondent, running from the winch and called the steam line, afforded and in making some of the boat's lines fast to it, a defect existed. It may be that the master of the boat participated in

some negligence in this respect, but if it be assumed that such is the fact, I do not see how it imposes any liability upon the libellant, as the master in such respect was acting for the respondent and against his own judgment of what was proper with respect to moving the boat at all at the time.

Decree for the libellant, with an order of reference.